UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

MARTA PABON
    Plaintiff
    vs.

:

:

:

2004 OCT 21  A 10: 12

CIV. ACTION NO: CV00380 DJS

JOSEPH RECKO, STATE CREDIT
ADJUSTMENT BUREAU, INC., &
JOHN FERRANTI
    Defendants

:

:

:

:

October 19, 2004

## BRIEF IN SUPPORT OF OBJECTION TO PLAINTIFF'S FEE APPLICATION

## I INTRODUCTION.

The Defendants, State Credit Adjustment Bureau, Inc., and Joseph Recko, object to the Plaintiff's Fee Application for the reasons set forth below. The Magistrate Judge ruled on the parties' respective Motions for Summary Judgment and granted judgment in favor of the Plaintiff on two allegations under the Fair Debt Collections Practices Act, and in favor of the undersigned defendants on one or more allegations under the FDCPA. A number of the allegations of wrongdoing lodged by the Plaintiff against the defendants were not reached because they involved factual issues which rendered them unsuitable for summary judgment determination. The Plaintiff thereafter abandoned and withdrew them. The two violations of the FDCPA that were found to have been committed by the State Credit were that it sued

1

the Plaintiff in the "wrong venue" and Mr. Joseph Recko, its owner, communicated with the Plaintiff after she was represented by counsel.

The Defendants agreed to damages at $1,000.00 for a variety of reasons, not the least of which was that it seemed an intelligent way to save the parties from the additional legal fees necessitated by a jury trial of damages. The Defendants believe that the claim for counsel fees is grossly excessive for the reasons set forth below.

### A.    Background of Case[1].

In 2000, the Plaintiff brought an action against the Defendants and co-defendant, John Ferranti, a lawyer, under the Fair Debt Collections Practices Act [FDCPA] and the Connecticut Unfair Trade Practices Act [CUTPA].[2] The case was ultimately decided by this Court on summary judgment in favor of the Plaintiff on two claims under the FDCPA, i.e., that the Plaintiff was sued in the wrong venue in violation of 15 U.S.C. 1692i(a)(2) of the FDCPA; and that the Mr. Recko communicated with the Plaintiff after the Defendants knew the Plaintiff had retained counsel. In addition to the two claims where the Plaintiff succeeded in her Motion for Summary Judgment, she also pressed four unsuccessful claims. They are:

> 1. The Defendants pursued Plaintiff on a debt she did not owe.

---

[1] The undersigned will not discuss the case in great detail because the Magistrate Judge who will hear this Application is already familiar with it.

[2] The count sounding in CUTPA also seemed to allege that the Defendant violated Connecticut's Creditors Collections Practices Act.

2

2. The Defendants misrepresented the amount of the debt.

3. The Defendants improperly sought a wage execution.

4. The Defendants engaged in legal practice in  violation of state law.

In addition to those claims, the Plaintiff sought to hold State Credit and Joseph Recko accountable under the Connecticut Unfair Trade Practices Act, claims that were not briefed in the Plaintiff's Motion for Summary Judgment, and thereafter, withdrawn.

## II THE FEES SOUGHT BY THE PLAINTIFF ARE GROSSLY EXCESSIVE.

When considering a fee application, a district court is obliged to set forth its reasons supporting the amount of the award, and showing how it has used its discretion.  In <u>Savino</u> v. <u>Computer Credit Inc.</u> 164 F.3d 81 (2d Cir. 1998), the Court wrote:

> "Where a plaintiff prevails... he should be awarded costs and attorney's fees in amounts to be fixed in the discretion of the court. Whenever the district court augments or reduces the lodestar figure, it must state its reasons for doing so as specifically as possible."

A. <u>The Hourly Rate Sought is Excessive.  The Proper Lodestar rate is</u> <u>$200.00 Per Hour.</u>

The Plaintiff seeks an hourly compensation rate of $300.00 per hour.  It should be noted that as recently as two years ago, the Plaintiff sought an hourly rate in this district of $275.00 per hour.  Why the hourly rate should rise during a period of low inflation and economic downturns is unexplained.

3

The proper hourly rate, however, should be $200.00[3] per hour, the amount regularly charged by practitioners from small firms of limited overhead, few employees, and minimal legal exposure. As best as the undersigned can tell, the Plaintiff's counsel is a sole practitioner without a secretary or staff. She practices within her house, thereby not only reducing her overhead, but allowing her to seek favorable business treatment of her home from the federal and state tax authorities. To compare her situation with those attorneys who practice in significantly large firms does not make sense. This is not because the Plaintiff's counsel is any less capable than those attorneys with whom she seeks to compare herself; it is because the nature of her practice is far different-- with little overhead, and without the responsibilities and administrative burdens of lawyers in large firms. For one, it is doubtful that Plaintiff's counsel carries malpractice insurance because her practice, devoted to consumers and the like, does not present situations where she can make an error that might occasion a claim. And one can assume that her clients, unlike banks or substantial corporations, do not require her to carry such a policy. Partners in lawfirms are required to attend meetings, supervise associates and staff, and spend time servicing clients, often in non-compensable ways. Such efforts are often time-consuming and exhausting. The Plaintiff's counsel does not have such responsibilities. Partners in larger law firms such as those cited by the Plaintiff's counsel would likely pass on

---

[3] See also Savino. Computer Credit, Inc., 164 F.3d. 81 (2d Cir. 1998)

4

much of their pre-trial litigation work to others. Clients of such partners would not expect to pay the high rates for work that could be performed efficiently and less expensively by others. In addition, <u>defending</u>, as opposed to prosecuting an FDCPA claim, requires the counsel to face multiple complicated tasks not faced by a plaintiff's counsel. A defendant's counsel would need to weigh the potential of the claim on the company's employees, its insurance carrier, its licensing authorities, and on aspects of its business.

Finally, partners in larger law firms recognize that their realization rate is often much less than the amount of time actually billed. Adjustments need to be made to ensure that their clients return.

State Credit and Joseph Recko have never employed a lawyer for any purpose for the hourly sum requested by the Plaintiff, and neither State Credit nor Joseph Recko should have to pay the higher rate to a lawyer over whose efficiency they have no supervision or control.

The Plaintiff's reliance on <u>Freer</u> v. <u>State Credit Adj. Bureau, Inc.</u>, Civil No. 3:97 CV 1239 (GLG) is misplaced. The Court there in fact reduced the claimed fees of over $15,000.00 to $10,000.00. That case, however, is instructive in that there, the Plaintiff prevailed after a jury trial, and after the Plaintiff unsuccessfully pressed forward a Motion for Summary Judgment. Despite the fact that a jury case requires substantially more time to prepare for than the kind of Summary Judgment disposition here, the fees claimed

were only 60% of those claimed here, and even those fees were reduced by one-third.

### B. The Compensation Sought is Excessive and not Related to Successful FDCPA Claims.

i.  The following entries for time, totaling 15.75 hours,  sought by the Plaintiff are not related to successful FDCPA claims:

>    *5/25/00 Draft Opp. To Dismiss: 2.5*
>    *6/19/00 Motion to Dismiss Ct II   .75*

The Motion and Brief to which those tasks were devoted involve the Defendant's unsuccessful attempt to have dismissed the Count alleging Unfair Trade Practices against Joseph Recko.  That claim was never adjudicated, and in fact, withdrawn.  It should be pointed out that bringing a CUTPA claim is a favored strategy of Plaintiff's counsel, and that in the now five cases[4] brought by the Plaintiff's counsel against State Credit, not once has she even sought to prosecute the CUTPA claim to its conclusion.  Bringing such a claim thus serves no purpose except to increase the time spent in each case and overcomplicate the litigation.  Such claims require more extensive discovery, and a complex standard of proof.

>    *1/15/01 internet research unauthorized practice  3.5*

The Plaintiff has neither prevailed on this claim nor has pressed it.  It was withdrawn.  Thus, the Plaintiff's counsel should not be compensated for

---

[4] Shrestha v. State Credit 3399 CV 00565PCD;  Zeppieri v. State Credit CV00381 CFD;
Zeppieri v. State Credit  CV01110 CFD; Freer v. State Credit 3:97CV1239 GLG;

it.

> *1/18/01 Beg. Draft re necessaries*     *1.75*
> *2/2/01 con't draft on necessaries*     *2.25*

The Plaintiff did not succeed on her claim that the Connecticut necessaries statute, C.G.S. 46b-37, was inappropriately applied to her by the small claims court.    Thus, her counsel is not entitled to compensation with respect to it.

> *2/2/01 Unauthorized practice of law 4.0*

This is another claim where the Plaintiff has not prevailed.   Summary judgment was not granted in either party's favor on this claim, and the claim was subsequently withdrawn.

> *9/6/00 Depo. Of Dr. Vecchitto 2.25*

Dr. Vecchitto's deposition served no purpose in this case.   The claims upon which the Plaintiff prevailed in her Summary Judgment Motion are "wrong venue" and "contact with a consumer represented by counsel."   The first claim needed no affidavit or testimony or facts from any of the parties. Ms. Pabon admittedly did not sign a contract, and lived in New Haven.   No testimonial light needed to be shed on either of these points.   With respect to the other claim, certainly Dr. Vecchitto knew nothing about whether she was represented by counsel, or about the details of the small claims case once it began.

---

and the instant case, <u>Pabon</u> v. <u>State Credit.</u>

ii.  The following time entries, <u>22.25</u> hours, were devoted to Defendant Ferranti as well as State Credit and Mr. Recko.  They should be divided by two.

| | |
|---|---|
| *1/5/01 Settlement conference both defendants* | *5.25* |
| *1/16/01 Library research, check cases* | *3.25* |
| *1/17/01 Library research FDCPA* | *2.75* |
| *1/18/01 Draft 3 affidavits for SumJdg* | *1.25* |
| *2/5/01 cite check, revise* | *1.25* |
| *Review of exhibits & Admits. Lts l. Nadel And Callahan* | *2.0* |
| *3/27/01 Review def. Mem. Prior SJ papers, draft reply* | *6.00* |

Each of these entries involves legal work against the Defendant Ferranti, who also was subject to the Plaintiff's Motion for Summary Judgment.  The proper charge against State Credit and Mr. Recko should be one-half of these entries.  It should be noted that we have not listed <u>all</u> of the legal services listed on page one, despite the fact that in nearly every one, the papers and work were directed to Defendant Ferranti as well as State Credit and Recko.

### C.  There Was No Preclusion from Other Employment.

The Plaintiff's counsel argues that one of the factors to be considered is her preclusion from other employment.  But her practice, as she states elsewhere, is devoted to consumer cases.  In this district alone, the Plaintiff in 2000 had more than twenty-five cases pending of the kind she brought here.[5]

---

[5]  "This Court is well aware of the innumerable consumer cases brought by Plaintiff's counsel in this district."  <u>Anse</u> v. <u>Academy Collection Service, Inc.</u> 2000 WL 133733 (D. Conn.)

Bringing cases like this one is the Plaintiff counsel's employment.

## III THE TIME CLAIMED SHOULD BE REDUCED BECAUSE THE PLAINTIFF'S COUNSEL KEPT TIME IN QUARTER-HOUR INCREMENTS.

The amount of compensable time should be reduced because the Plaintiff's counsel kept time in increments of quarter hours.[6] Most other lawyers keep time sheets in increments of tenths of an hour. It is what most clients expect. Lawyers seeking fees from the bankruptcy court in this district are required to keep their time in increments of tenths of an hour.[7] The use of quarter hour increments has been frowned upon by other courts, and cited as a reason to reduce fee awards to consumer counsel in fair debt cases. See for example Hensley v. Berks Credit & Collections, Inc. 1997 WL 725367 (E.D. Pa. 1997). Without such a rule, where as here there is no control by a client over a lawyer's methods of practice of bookkeeping, lawyers must be held to at least the same standards ordinarily governing lawyers hired and paid for by their clients.

## IV THE CIVIL RIGHTS CASES CITED BY THE PLAINTIFF IN THE FEE APPLICATION WARRANTS A REDUCTION IN THE FEES CLAIMED BECAUSE OF THE MINIMAL NATURE OF THE STATUTORY RIGHT SUCCESSFULLY PROSECUTED IN THIS CASE.

In the Plaintiff's application, the Plaintiff submits that fee standards in civil rights cases are applicable because an important public policy was vindicated." Under civil rights fee standards, the Plaintiff would probably

---

[6] There were two entries made that were not quarter-hour entries out of 59. Statistically, this is so improbable as to be virtually impossible, and demonstrates that the Plaintiff spent a great deal of time

9

receive a very reduced fee. For example, in <u>Farrar</u> v. <u>Hobby</u> 506 USM120, 113 S. Ct., 566, 578 (1992), a jury found that the plaintiff's civil rights were violated and awarded him one dollar in damages. The Supreme Court held that the plaintiff, although the prevailing party, was not entitled to recover legal fees; the award was too small, and the right invaded too unimportant. The damages awarded here are purely statutory, and agreed upon for various reasons—one of which was to save the expense of litigating such a small matter before a jury. The Plaintiff has not demonstrated thus far any actual damages or pecuniary loss. For example, the Court in <u>Johnson</u> v. <u>Eaton</u> 80 F.3d 148, took a dim view of awarding counsel fees to successful FDCPA plaintiffs when there is no real injury:

> Reading the FDCPA as requiring attorney's fees to be paid in actions where the plaintiff fails to prove damages rewards lawyers for bringing suits to stop behaviour, that by definition, has caused legal injury to no one. Our interpretation of the statute will require attorneys to look for more than a technical violation of the FDCPA before bringing suit and will deter suits brought only as a means of generating attorney's fees. <u>Johnson</u> v. <u>Eaton</u> 80 F. 3d 148, 151 (1996).

In this case, Ms. Pabon, a legal secretary, has already been rewarded for bringing this suit when she was paid a settlement by Attorney John Ferranti, formerly a co-defendant. Can there be any doubt that Ms. Pabon's lawyer, who has already received over $5,000.00 in fees from Attorney Ferranti, and

---

and energy massaging the fee application on this case.
[7] See local rules of D. Connecticut Bankruptcy Court.

who claims fees 25 times higher than the damages of Ms. Pabon awarded against State Credit is the only one with a real stake in this case?

## IV. CONCLUSION.

If the Court rules favorably on the fee application, the application should be approved in the amount of not more than $7,500.00. The Plaintiff's counsel has already been substantially compensated by Attorney Ferranti who settled this case. The Plaintiff's counsel had been awarded $10,000.00 after a jury trial, a far more taxing and time consuming matter than the relatively simple pursuit of summary judgment here.

THE DEFENDANT
JOSEPH RECKO & STATE
CREDIT

By_____
Laurence P. Nadel

Of:    Laurence P. Nadel, P.C.
261 Bradley St.
New Haven, CT 06511
Tel. No: 777-8356
Fed. No. CT. 05929

### CERTIFICATION

I hereby certify that I have sent a copy on October 20, 2004 of the foregoing by first class mail, postage prepaid to Joanne Faulkner, Esq. 123 Avon St., New Haven, CT 06511.

Laurence Nadel, Esq.

11